**STATE of Missouri, Plaintiff-Respondent,**

v.

**Robert LOHMAN, Defendant-Appellant.**

No. 13984.

Missouri Court of Appeals, Southern District, Division Two.

March 27, 1986.

William L. Webster, Atty. Gen., Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Lew Kollias, Columbia, for defendant-appellant.

PREWITT, Chief Judge.

Appellant was charged with stabbing and killing Sabrina Catron in St. Francois County on "either the 7th or 8th day of November, 1975". Following jury trial he was found guilty of second-degree murder and sentenced to life imprisonment. Appellant's point on appeal states:

The trial court erred in overruling appellant's motion to suppress oral and videotape statements and objections at trial to those statements because said statements were obtained in violation of ap-

pellant's fifth, sixth and fourteenth amendment constitutional rights in that counsel for appellant, who was representing appellant on another charge, asked state highway patrol officers who were investigating the murder in the case at bar not to question appellant about that case unless the attorney was present or could consult with his client first, and appellant should have been (but was not) informed of the attorney's admonition to the police officers to make a full and knowing waiver of his constitutional rights before making statements.

The facts on which appellant's point is based are not disputed. Jack Leftridge, an attorney, was representing appellant on a murder charge in the fall of 1982. While that charge was pending, he received a phone call from the prosecuting attorney of St. Francois County regarding the death of Sabrina Catron. The prosecutor told Leftridge that troopers from the Missouri State Highway Patrol wanted to talk to appellant regarding Catron's death.

Leftridge testified that he told the prosecutor, "I didn't want the troopers talking to him unless I was there or had an opportunity to talk with him before, that I could not meet with them that evening and that I didn't want anybody talking to him about that case until I talked to him." Leftridge said in his experience that when he told law enforcement officers or the prosecuting attorney that he did not want them talking to his client "that they do not talk to them." He testified, "I assumed in my own mind that no one would."

Leftridge said that the prosecuting attorney did not tell him that he would instruct the highway patrol not to talk with appellant nor made any assurances that they would not talk to him. Leftridge also testified that the prosecutor did not say anything that indicated he would not honor Leftridge's request.

Without Leftridge's knowledge and before he had talked to appellant regarding Catron's death, within a "few days" of the conversation, statements were taken from appellant by the highway patrol. The statements indicated that appellant participated in causing her death. After the statements were taken from appellant he was charged with the murder of Catron. Leftridge represented appellant at the preliminary hearing on that charge.

A highway patrolman testified that he was in the prosecuting attorney's office when the prosecuting attorney talked to Leftridge by phone. He said that he and a highway patrol sergeant also talked to Leftridge at that time. The patrolmen said Leftridge asked them not to talk to appellant, but they made no promise not to speak with appellant. After the patrolman told his supervisor about the conversation with Leftridge, the supervisor contacted a patrolman from a different highway patrol troop and they went to the Washington County Jail, where appellant was incarcerated on another charge, and talked to him. After giving appellant the *"Miranda"* warning, defendant made a statement admitting participation in the death of Sabrina Catron. The next day another statement, apparently substantially the same, was taken from appellant on video tape.

Among the many cases cited in appellant's excellent brief is *Burbine v. Moran*, 753 F.2d 178 (1st Cir.1985), cert. granted, — U.S. ——, 105 S.Ct. 2319, 85 L.Ed.2d 838 (1985). Since December 3, 1985, when appellant's brief was filed, the Court reversed that decision. On March 10, 1986, the Court handed down *Moran v. Burbine*, — U.S. ——, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). There, the Court found that the criminal suspect's rights under the fifth, sixth, and fourteenth amendments to the United States Constitution had not been violated by the police officers not informing the suspect that an attorney retained in his behalf by a third person was attempting to reach him, nor by the police misleading the attorney regarding their intentions to interrogate the suspect further that day.

There is no dispute that appellant was warned of his fifth amendment rights and that he waived his rights before giving the statements. In *Moran*, the conduct of the officers was more reprehensible than in

this case. Here, there was no misleading information given, just a failure to follow the attorney's request. Calling appellant's attorney to ask his permission indicates that the law enforcement officers would not talk to appellant absent that consent. There would be no reason to call if they were not going to honor the attorney's request. However, they never expressly said they would not question appellant, and there was no direct deception as in *Moran*.

Based on *Moran* and *State v. Beck*, 687 S.W.2d 155 (Mo. banc 1985), we conclude that taking and using the statements did not violate appellant's rights under the fifth, sixth, or fourteenth amendments of the United States Constitution. See also *Maine v. Moulton*, 474 U.S. ——, —— n. 16 106 S.Ct. 477, 490 n. 16, 88 L.Ed.2d 481, 499 n. 16 (1985) (Although defendant was represented by an attorney on a pending charge, "statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.")

The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.